We'll start with Mr. Ulrich. Good morning, Your Honor. May it please the Court? Frederick Ulrich. I'm an assistant federal public defender in the Middle District of Pennsylvania and I represent the appellant, Eugene Davis. I'd like to reserve five minutes of my time for rebuttal. Five minutes. That's granted. Go ahead, sir. Although I have some preliminary questions, would you like me to ask those before you get into your presentation? Certainly. My presentation is fairly short, so the preliminary questions may be better served at the beginning. Great. Can you tell me, I read in the unopposed motion that was presented that your client's sentence was reduced to 152 months. Is that occurred, although my assistant... That was my next question. It was, I believe, a part of a Rule 35 motion. Okay, because it was a footnote in your papers and, you know, it wasn't on the docket sheet and, or at least not that we could find. So I wanted to make sure that I asked you about that. I believe it was done under seal too, so. Oh, okay, maybe that's why we couldn't find it. The other question I asked, I needed to ask you is, it reflected in the papers that he was indicted in August of 2009 and pled guilty in October of 2009. Could you tell me when he was arrested, if you know? I do not know the date of arrest off the top of my head. I believe it was fairly close to the indictment date, though. I could supply that out, however, to the court if need be. Yeah, I'm not sure it'll be necessary, but I thought you might know it off the top of your head. And it may be reflected, actually, in the motion for bail that we filed. I seem to recall that I had to do a calculation or a rough calculation of how much time he had served, so I think I put in that motion the date he would have been detained. Okay, we'll check on that. You know, I'll just tell you the reason that I was asking. It seemed that the numbers might work. If his sentence was 152 months, 85 percent would be somewhere around 129 months, and that's why I asked. And that's correct. I think he had actually, if he were using the 10-year maximum for the 922-G offense, would have slightly or somewhat over-served that period, but you're right, the numbers came out pretty close. Yeah, in any case, go ahead and I'll make sure that we give you a little more time. Thank you. In this case, as Your Honor recognized, I find myself in a rather unusual and unfamiliar circumstance where I agree with the government, at least insofar as relief for Mr. Davis goes. And we believe the government's position is well taken, and here's why. To begin, Dorsonville applies because there, as here, there isn't a change in the interpretation of same statute, Section 924, albeit a different subsection by the Supreme Court. And relief under Dorsonville is available, as the government argues, in the narrow circumstance presented here, where a sentence, given an intervening decision of statutory interpretation, now exceeds the otherwise applicable statutory maximum. Let's get into this for a second. Obviously, 924-E is a sentence enhancement, correct? And the whole focus here is on jurisdiction. We agree on that, yes? The focus is on jurisdiction, but I think I would differ on the sentence enhancement aspect, at least as far as this goes. The Armed Career Criminal Act functions very similar to an offense, much like 924-C does. They're both under a chapter that's labeled penalties, and for many years, 924-C was viewed as simply a penalty or an enhancement because it provided for a consecutive sentence. And the Armed Career Criminal Act functions the same way. It increases the penalty that a court must impose, 15 years, and the maximum sentence is elevated to life. And so what you have is a situation where the conduct, in this particular case, is no longer illegal under the Armed Career Criminal Act because you must engage in the firearm offense while having three qualifying felonies, and Mr. Davis doesn't have them. When we look at your brief, though, on page 17 of your brief, you essentially admit, right, that 924-E functions as a separate offense, but it's not deemed a separate offense. So are you asking us to essentially make new law on this? Because, you know, we'll get into the Dorsonville, Okariki, and Gardner, but I wanted to sort of start with the principle, are you seeking us to extend our jurisprudence on that? Because functions as a separate offense is different than is a separate offense, and if it only functions as a separate offense, that doesn't bring it under Dorsonville necessarily. I think it does actually bring it under Dorsonville. I'm not asking the court to relabel it as a separate offense, but obviously, you know, the change in the character of the penalty is rather dramatic under 924, and that's why it has to be charged, or, you know, an individual has to know it for purposes of pleading and trial. Otherwise, it would offend due process. So in many respects, it's very similar. This is Judge Porter. What conduct under Section 924-E was formerly criminal that is now not criminal? Well, the conduct that would be no longer criminal is the fact that he, to commit that offense, to fall under 924-E, you have to not only commit a firearm offense, but you have to have three qualifying prior felony convictions. He no longer has them, so he would no longer fall within the purview of that particular section. Right, but walking around having those three prior convictions is not criminal conduct, is it? No, it's not, but once you do so, when you have a firearm in your possession, it becomes a different sort of criminal conduct than simply possessing a firearm as a felon. Doesn't that go back to Judge Greenaway's question as to whether this is just a sentencing enhancement rather than an offense, an element of an offense? Well, I guess where I depart from Judge Greenaway's label as simply an enhancement is an enhancement in many respects functions like they do in the guidelines where you're within a statutory range, but you might be exposed to a different guideline range if you are a leader or organizer, if you possess a certain number of weapons, if you happen to be a career offender. And this is different from that because you're thrown into not only a different range of punishment for purposes of the guidelines, but you're actually exposed to a mandatory 15-year sentence to begin with and a maximum of life. So, yeah, but those aren't two things. Those aren't two separate things. Those are sentence enhancements. A range of punishment is the same thing as the mandatory minimum. It has to do with what you're sentenced to. It does actually have to do with whether you're guilty of a separate crime because it's charged in the indictment and that's the section that sets your punishment. It's not 922G, it's 924E. And in that respect, it functions just like 924C, that issue in Dorsonville, where if you committed a drug offense or a crime of violence, that was one thing, but if you did so with a firearm, then you were subject to this penalty under 924 that required a separate five-year or seven-year or ten-year sentence apart from the underlying offense. And the same thing is true here. The only difference is the focus, instead of on the underlying conduct, is the connection to the three qualifying felonies. Well, can you get back to Judge Porter's question with the following in mind. Your reliance on Dorsonville, I think, can't be looked upon sort of separately and apart as part of our jurisprudence. It's obviously now, I think, colored, if you will, by what we said in Okariki and Gardner. And I think when you read Okariki and Gardner, it's hard not to come away from that, seeing that there's a distinction between innocence of the offense, Judge Porter's question between criminal and non-criminal, what was previously criminal that is not criminal, versus the sentence enhancement, the innocence of the offense. Tell me, how can we get to where you are hoping we get to when both Gardner and Okariki inform our jurisprudence in Dorsonville? Well, I guess I'd start out by pointing out that both Gardner and Okariki deal with constitutional claims related to who makes the relatively important finding at a sentencing under Apprendi and Alleen. And that is a little bit of a different circumstance procedurally than subjecting somebody to a much different punishment than they might otherwise be subjected to under 924E. So I think those two cases which deal with constitutional procedural claims are different than a claim falling under 924, which is the same section that was at issue, albeit a different subsection, in Dorsonville. So we're not asking that Dorsonville be extended in general to all sentencing claims. There may be some sentencing claims that fall outside its purview, and at least one of them is mentioned in the government's brief, Taritz, which I believe Judge Greenaway is on the panel in that case. So guideline issues, I think, could be distinguished from, in our view, from a claim falling under section 924E, which functions, as I said, and as we believe, as almost a separate offense in terms of how it's carried out, the punishment and statutory penalties, that is. And it's also our view that the government's position in this case squares with the plain language of section 2255E, which speaks in terms of detention, and the construction is consistent with the core function of habeas corpus, which addresses challenges to the duration of a sentence and functions as an equitable remedy. And those are the reasons we believe that this case, given its peculiar facts and unusual circumstances, falls within Dorsonville and is a direct application of it. And for those reasons, we'd ask the District Court's order and remand for directions to grant relief. Judge Mady, did you have a question? No. Judge Porter? No, I'm good. I had one additional question. Let me present a hypothetical that you may not like. Let's assume for a moment that you do not obtain the relief that you seek on behalf of your client, but your client has served, forget about the 10-year statutory maximum that is the crux of your argument, let's assume for a moment that you obtain the term of the sentence for the 152-month sentence. Is there a way in which to grant any relief to him if we deem that we lack jurisdiction, meaning we disagree with both you and the government? Well, I guess that that question would simply bear a little bit on whether his requested relief has been mooted as a result of having served the reduced sentence. Am I correct? Is that the direction? Yes, you are correct. And I don't know off the top of my head, as I admitted earlier, whether that calculation is consistent with how close he was to serving. And some of that may have to do with the fact that, as the Court knows, the good time credits were modified and the calculation didn't take effect for certain inmates right away. So I... Is that something that you could make a submission to the Court on? Yes, and that seems like it would be a fairly important thing to know at this juncture. Yeah, I would think. Is 10 days enough? Certainly. Great. My colleague, anything further for me? Okay, thank you. Let's hear from appellees, please. May it please the Court? My name is Melissa Swager and I represent the Warden of Allenwood. The government recognizes here that this Court's cases have declined to apply the Savings Clause to sentencing claims. Those cases were non-presidential and outside the context of the ACCA. It is the Department's position, however, that because this Court has agreed that habeas relief is available to correct fundamental defects, such as actual innocence, a logical extension of Dorsonville would be here, where Davis' sentence exceeds the statutory maximum. So the government requested the Court... Go ahead. Yeah, I'm so sorry, I didn't hear you. The government requested the Court... This Court vacate the District Court's order, remand with instructions to vacate Davis' sentence. Well, my first question to you, Counsel, is this is one of those interesting cases where the government has sort of, let's say, moved around quite a bit. That would be fair. So I'm wondering, is the genesis of that a different view of the interaction between Dorsonville on the one hand and Okariki and Gardner on the other? Because while the NPOs that you allude to are interesting, they're obviously not dispositive, and I don't think they lay at the heart of the matter. And what happened in this case with our, let's say, reverse imposition, is we consulted with the District of Conviction, the Northern District of Iowa, and relying on Brown, we agreed that his sentence should be vacated and resentenced. And thereafter, the magistrate judge believed that the District Court cannot exercise jurisdiction over his habeas petition, despite our position, and urged us to look at the line of cases in the District Court that listed Dorsonville exception. And after reviewing those cases, our office determined, based on the Third Circuit precedent, that the government should argue the District Court lacked jurisdiction. And at that point, he hadn't served his maximum sentence. And then when he appealed, we looked at this matter again and consulted with criminal appellate at Bean Justice to determine the department's current position, which has evolved over the years on the savings clause. And we looked at this, and he was at his statutory maximum, or close to it at that point. So it was the department's position that a logical extension of Dorsonville would be to correct a serious sentencing error where somebody would be serving above the statutory maximum. And in looking at the Okoriki and Gardner, there they dealt with a factual issue that was proven to the jury to increase the sentence. So I think that's different than what we have here. Well, before we get into Okoriki and Gardner, just a couple more preliminary questions. Since you're familiar with his sentence, etc., has he reached the statutory, not the statutory, has he reached his maximum sentence on the 152-month sentence? That was our understanding based on when we looked at this at November. And I got to say, I don't do a lot of criminal law, but I was relying on criminal appellate for that, and that was their determination. Because I have to say, Judge Porter can speak for himself, in the motion that you made to us, my understanding of what had been written was that your argument was, or not your argument, you conceded it was the motion of appellant, but the argument was that he had reached the 120-month. It exceeded the 120-month statutory maximum, if we viewed the case in that way. And my question is slightly different. I want to know whether he's reached his release date on the 152-month sentence. I believe as of, I believe he had, when we had looked at it in November or December at that time, he would have been at that point. Yeah, the only reason I asked, and is obviously, it's possible that we would take a different view of the case, if that were so. So would you, along with counsel for appellant, make a submission within the next 10 days on this issue? Okay, yes, your honor. All right, very well. So I'll yield the floor to my colleagues, since we've settled that. This is Judge Porter. Of all of the, there's a handful, as you know, there's a handful of non-presidential opinions that deal with this issue. I think the one that's closest to our case is Pearson, against Kanan, Warden Kanan, or Kanane. Because that dealt with sentencing enhancement under Section 924E, like our case. How would you distinguish that case from the result you want to reach here? I guess the follow-up question is, I don't know how we can, if we can't extend, if we can't apply Dorsonville, but would have to extend it, how do we have jurisdiction? Isn't the whole question about our jurisdiction to reach this, to entertain the petition and reach this result? Well, on the jurisdictional, I think the Third Circuit has left that, suggested it in Gardner. And I don't know that there's any presidential case that has foreclosed this court's jurisdiction to invoke the savings clause in a matter like this. But I thought the whole point of the interaction of the savings clause here is, when you look at Gardner and Okereke, I'll take the, your adversary distinction that involved constitutional claims versus guidelines claims. But at the end of the day, the takeaway is, Okereke and Gardner involved instances of sentence enhancement. And that's a question of innocence of sentence, which is the essence of Mathis's effect on Davis. This is not, as Judge Porter alluded to earlier, an instance where there was a charge of something that was I can hear you, that you want a logical extension of Dorsonville, but both Gardner and Okereke are presidential cases. So I don't know how we would, how we can write around them when both of them say that 2241 is not accessible. And the government understands that, you know, we're not asking you to reconsider Dorsonville, and the panel is bound by that. I guess maybe some of the non-presidential decisions left this open, Henry Barr or Newman, where you And again, it's just that the department looks at this as a fundamental defect that should be corrected in the sense that if he were sentenced today, he served his statutory maximum. Let me ask you the same question that I asked your adversary, and that is, if you assume all the numbers work out, but we have a difference of you can get to 2241, is there a way to, is it merely as simple as he's reached his sentence limit, it's moot, and we need not resolve this, or how would you go about thinking about that? On the mootness, I mean, 2255 is determined when it's filed, and he was detained when it's filed, but he's been released pending the appeal, and it's my understanding they're treating it as a supervised release until October, so the fact that he could go back to prison, I don't believe it is moot. I think after October, likely moot, because at that point, his sentence wouldn't be pending anymore, and in October, I think it's October 8th of this year, his sentence is complete, but I think because he can go back to prison within the next couple months, it would make his sentence, I would think it would make this issue not moot. Okay, I just want to know how to think about that. This is Judge Porter again. I think you're right that Gardner and Okereke don't foreclose us from extending Dorsonville, although it is interesting, Judge Slover wrote both Dorsonville and Okereke, and she didn't make the extension, but give us the argument of why we should extend Dorsonville to a sentencing enhancement case. Well, we don't view it as a sentencing enhancement case. I mean, we're not advocating that it would be available for sentencing errors or mandatory guidelines, career offender, mandatory minimum, but it is a serious sentencing error that may be redressable like the fundamental defect category, and in particular, a sentence such as this, where in light of the intervening decision of a statutory maximum sentence of imprisonment, and we consider that like a fundamental defect, while there is some judicial discretion with this sentence, a sentence should never exceed what's been authorized by law or statute, and here he would be serving more than is authorized by statute. Does that answer your question? Judge Matey? Counsel, Judge Matey, if I'm following you correctly, your line is some sort of fundamental defect. In other words, you would ask the court to interpret the phrase, test the legality of his intention in the savings clause to mean some sort of serious problem, fundamental as you're calling it, and that would allow the court to apply redress in situations such as this, but not in, I guess, what you would consider lesser defects such as sentencing enhancements that don't fall from the underlying, that aren't related to the invalidity of the underlying statutory enhancement. Correct, that are dealing with ranges or not certainly not situations where somebody has served more than their maximum sentence authorized by law. Thank you. If the court has no additional questions, oh I'm sorry. Well, you know, relax, you're not at the podium, right? I'm walking around my kitchen, actually. No notching, that's not fair. Judge Porter, do you have anything further, sir? No, sir. All right, just give me a moment, counsel. Let me ask you, one thing that concerns me is, if we don't extend Dorsonville, as you suggest, my sense from your argument is that, in your view, Davis would be left with no remedy where Mathis seemed to provide, at least theoretically for him, some tangible relief, right? The crime that was used as an enhancement is no longer deemed a crime of violence, and now he essentially would get stuck with a sentence reflecting that when the law doesn't reflect that. My question is this, as we think about, you know, a pathway, you talked to Judge Porter about an extension, is your reflection of the error, the fact that this particular petitioner has no avenue of relief? Are you concerned that there will be a class of petitioners that won't have avenues for relief? It is the department's position that this particular individual, this particular petitioner, has no avenue for relief. If he was sentenced today under Mathis, he would have served his maximum sentence. Yeah. So in this particular case. Okay, that's helpful. I don't think my colleagues have anything further, so counsel, thank you very much, and we'll hear from Mr. Ulrich on rebuttal. Thank you, Honor. Just very briefly, I do think that looking at the non-published decisions and Gardner and Okereke, that this unusual circumstance certainly falls in between them. I don't think it's an extension to the sentencing enhancement circumstance to provide relief for Mr. Davis in this unusual set of circumstances, because as counsel for the government indicated it, he would otherwise be subject to serving a sentence beyond the statutory maximum. And there's language both in Newman v. Kirby and Pollard v. Yost, as well as from Judge Fisher in Bruce, who talks about the ability to challenge a sentence under 2241 where it violates a substantive rule. Admittedly, that's dicta relative to the holding in that case, but I don't think that Okereke and Gardner would necessarily control the outcome here. And getting back to your question, Judge Greenaway, I'm assuming that your question is if we can get a calculation from the Bureau of Prisons that would suggest that the date of release would have satisfied the 152 months. In my view, if the BOP were to I believe you're correct, that would probably moot his request for relief because he's seeking relief from a sentence, and if he had served it, the court wouldn't have any ability to. Exactly, which is why I asked the question, because if he's served that, essentially maxed out on that then, you know, this relief has to be moot, right? Because he should be released. Correct. I'll do our best to find that answer out from the Bureau of Prisons. Hopefully we can do it in 10 days. If you need an extension, let us know, but I would think that you could, hopefully they'd be able to provide you with that, and we would, you know, obviously need your representation that this is exactly what they said, and you know, it's official and so forth. We'll work on it as soon as we're finished here today. Thank you very much, and that's all I have. Yeah, thank you. My colleagues, do either of you have anything for Mr. Ulrich on rebuttal? No, sir. Nothing from me. Okay, great. Mr. Ulrich, thank you very much. Council, we appreciate you accommodating the circumstances that we all are operating under. It's not ideal. I like Philadelphia, and I love seeing council, but not possible this time around, so thank you all. We'll take the matter under advisement, and we'll look forward to your submissions in 10 days time. Like I said, if you need more time, please inform the court, and we'll be happy to give that to you. We'll take the matter under advisement. Have a good day.